Slip Op. 17-117

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| MAQUILACERO S.A. DE C.V., | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : Before: Richard K. Eaton, Judge |
| UNITED STATES, | : |
| | : Court No. 15-00287 |
| Defendant, | : |
| | : |
| and | : |
| | : |
| WHEATLAND TUBE COMPANY, | : |
| | : |
| Defendant-Intervenor. | : |
| | : |

**OPINION and ORDER**

[Plaintiff's Rule 56.2 motion is granted, and the United States Department of Commerce's Final Scope Ruling on Certain Black, Circular Tubing Produced to ASTM A-513 Specifications by Maquilacero S.A. de C.V. is remanded.]

Dated:   August 30, 2017

*Diana Dimitriuc-Quaia*, Arent Fox LLP of Washington, DC, argued for plaintiff. With her on the brief were *John M. Gurley* and *Aman Kakar*.

*Elizabeth A. Speck*, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for defendant.  With her on the brief were *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Claudia Burke*, Assistant Director.  Of counsel on the brief was *Lydia C. Pardini*, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

*Jordan C. Kahn*, Schagrin Associates of Washington, DC, argued for defendant-intervenor. With him on the brief was *Roger B. Schagrin*.

Eaton, Judge: Before the court is Maquilacero S.A. de C.V.'s ("Maquilacero" or "plaintiff") motion for judgment on the agency record challenging the final scope ruling by the United States Department of Commerce ("Commerce" or the "Department") in *Final Scope Ruling on Certain Black, Circular Tubing Produced to ASTM A-513 Specifications by Maquilacero S.A. de C.V.*, Case No. A-201-805, P.R. 10, ECF No. 40 (Dep't Commerce July 27, 2015) ("Final Scope Ruling"), which found that certain black mechanical tubing made by Maquilacero was within the scope of the antidumping duty order on *Certain Circular Welded Non-Alloy Steel Pipe from Brazil, the Republic of Korea (Korea), Mexico, and Venezuela*, 57 Fed. Reg. 49,453 (Dep't Commerce Nov. 2, 1992) (the "Order").

Maquilacero argues that Commerce's inclusion of its tubing within the scope of the Order is contrary to law and unsupported by substantial evidence because: "(1) Commerce failed to give effect to the unqualified exclusion for mechanical tubing in the scope language; (2) Commerce modified, rather than interpreted, the scope language to require 'stenciling' as a condition for excluding certain mechanical tubing from the scope; and (3) Commerce failed to address Maquilacero's arguments" regarding the factors found in 19 C.F.R. § 351.225(k)(2) (2015) (the "(k)(2) factors")[1] which establish that Maquilacero's mechanical tubing meets the

---

[1]     Under 19 C.F.R. § 351.225(k), "in considering whether a particular product is included within the scope of an order or a suspended investigation," Commerce first considers:

> (1) The descriptions of the merchandise contained in the petition, the initial investigation, and the determinations of the Secretary (including prior scope determinations) and the Commission.

19 C.F.R. § 351.225(k)(1). If the criteria listed above are "not dispositive," however, Commerce will consider the (k)(2) factors, which consist of:

> (i) The physical characteristics of the product;

(footnote continued . . .)

description of mechanical tubing excluded from the Order.  Pl.'s Br. Supp. Mot. J. Agency R.,

ECF No. 30, ("Pl.'s Br.") 2.

Defendant, the United States (the "government" or "defendant"), on behalf of Commerce,

argues that Commerce's ruling is supported by substantial evidence and in accordance with law.

Specifically, defendant asserts that Commerce reasonably determined that (1) the term

"mechanical tubing" was subject to interpretation; (2) the plain language of the Order does not

exclude plaintiff's products; (3) an analysis of the factors in 19 C.F.R. § 351.225(k)(1) (the

"(k)(1) factors") requires that tubing must be stenciled in order to qualify for the scope

exclusion; and (4) Commerce was not obligated to analyze the (k)(2) factors. Def.'s Resp. Pl.'s

Mot. J. Agency R., ECF No. 38, ("Def.'s Br.") 9, 11.

Defendant-Intervenor, Wheatland Tube Company ("defendant-intervenor" or

"Wheatland"), adds that Commerce properly interpreted the scope of the Order to exclude only

tubing produced to the ASTM A-513 specifications "meeting certain physical requirements and

stenciled" because (1) Commerce interpreted the Order's scope in accordance with law; (2) the

stenciling requirement "enhances . . . enforceability and avoids duty evasion"; and (3) Commerce

was not required to conduct a (k)(2) factors analysis.  Def.-Int. Resp. Opp'n Pl.'s Mot. J. Agency

R., ECF No. 39, ("Def.-Int.'s Br.") 13.

This court has jurisdiction pursuant to 28 U.S.C. § 1581(c) (2012) and 19 U.S.C.

§ 1516a(a)(2)(B)(vi) (2012).

---

(ii) The expectations of the ultimate purchasers;
(iii) The ultimate use of the product;
(iv) The channels of trade in which the product is sold; and
(v) The manner in which the product is advertised and displayed.

19 C.F.R. § 351.225(k)(2).

Because the court finds that Commerce's ruling that Maquilacero's products must be stenciled to be excluded from the Order is an unlawful expansion of the scope's language, the court remands the Final Scope Ruling with instructions.

## BACKGROUND

On September 24, 1991, members of the U.S. steel pipe industry, including defendant-intervenor, petitioned for the imposition of antidumping duties on circular welded non-alloy steel pipe from Brazil, the Republic of Korea, Mexico, Romania, Taiwan, and Venezuela. *See Initiation of Antidumping Duty Investigations: Circular Welded Non-Alloy Steel Pipe From Brazil, the Republic of Korea, Mexico, Romania, Taiwan, and Venezuela*, 56 Fed. Reg. 52,528 (Dep't Commerce Oct. 21, 1991) ("Initiation Notice"). On September 17, 1992, Commerce's investigation resulted in a determination that circular welded non-alloy steel pipe from Mexico was being sold at less than fair value (*i.e.*, dumped). *See Circular Welded Non-Alloy Steel Pipe From Mexico*, 57 Fed. Reg. 42,953 (Dep't Commerce Sept. 17, 1992) ("Final Determination"). The Final Determination's scope language described, in pertinent part, the subject merchandise as being "generally known as standard pipe, though [it] may also be called structural or mechanical tubing in certain applications." Final Determination, 57 Fed. Reg. at 42,953. In the following paragraph, however, Commerce specifically excluded "cold-drawn or cold-rolled mechanical tubing" from the scope of the determination. Final Determination, 57 Fed. Reg. at 42,953. Thus, even before the United States International Trade Commission's ("ITC") negative injury determination, Commerce determined that some mechanical tubing would not be included in the Order. Final Determination, 57 Fed. Reg. at 42,953.

In October 1992, the ITC found that the United States' circular welded non-alloy steel pipe industry was materially injured by imports of standard and structural pipe from, among

other countries, Mexico.  *See Certain Circular, Welded, Non-Alloy Steel Pipes and Tubes from*

*Brazil, the Republic of Korea, Mexico, Romania, Taiwan, and Venezuela*, Inv. Nos. 731-TA-532-

537, USITC Pub. 2564 (Oct. 1992) ("ITC Final Determination").   In its determination, the ITC

also found that "subject mechanical tubing" (*i.e.*, mechanical tubing that is not cold-drawn or

cold-rolled) constituted a separate like product from "standard and structural pipes and tubes"

based on different end uses and lack of interchangeability. ITC Final Determination at 16-17.

The ITC also noted, however, that "the majority of domestically-produced mechanical tubing is

either cold-drawn or cold-rolled" (the product previously excluded by Commerce) and that "[n]o

party has argued that [cold-drawn or cold-rolled] mechanical tubing, which [is] not included in

the scope of the investigation, should be included in a like product consisting of mechanical

tubing." ITC Final Determination at 15-16 n.49.   In addition, because the ITC found that there

had been "no significant imports of subject mechanical tubing from . . . Mexico,"  there was no

material injury to the domestic industry. ITC Final Determination at 38. Moreover, the ITC

found that Mexico had "no industries producing the subject mechanical tubing," and there was

> no likelihood that the market penetration of subject mechanical tubing from
> Mexico . . . will increase to an injurious level; no probability that imports of the
> Mexican . . . merchandise will enter the United States at prices that will have a
> depressing or suppressing effect on domestic prices of the merchandise; and no
> actual and potential negative effects on the existing development and production
> efforts to develop a derivative or more advanced version of the like product.

ITC Final Determination at 42. Accordingly, the ITC found "no threat of material injury by

reason of [the dumping of] imports of subject mechanical tubing from Mexico . . . ." ITC Final

Determination at 42. Thus, the ITC found that the mechanical tubing that remained under

investigation following Commerce's exclusion of "cold-drawn or cold-rolled" mechanical tubing

(1) represented a domestic industry separate from standard and structural pipes and tubes, and (2)

had not resulted in a rapid increase in U.S. market penetration due to its importation. ITC Final

Determination at 38, 42. Thus, the ITC's findings did not consider that subject mechanical tubing should be included in the scope of the Order. *See* ITC Final Determination at 38, 42.

Following the ITC Final Determination, on November 2, 1992, Commerce issued an antidumping duty order for circular welded non-alloy steel pipe from, among other countries, Mexico.  *See* Order, 57 Fed. Reg. at 49,453.  Because the ITC had found that mechanical tubing from Mexico was not causing or threatening injury, Commerce's Order contained the following language:

> In its final determination, the ITC determined that three like products exist for the merchandise covered by the Commerce investigations: (a) Mechanical tubing; (b) finished conduit, and (c) standard and structural pipe. The ITC's affirmative injury determination covered only standard and structural pipe. Accordingly, the scope of the antidumping duty orders . . . have been modified to reflect the ITC's findings.

Order, 57 Fed. Reg. at 49,453-54. In particular, the scope's first paragraph, which describes the subject merchandise, removed the earlier reference to "mechanical tubing" and instead described the merchandise as being "generally known as standard pipes and tubes":

> The products covered by these orders are circular welded non-alloy steel pipes and tubes, of circular cross-section, not more than 406.4 millimeters (16 inches) in outside diameter, regardless of wall thickness, surface finish (black, galvanized, or painted), or end finish (plain end, bevelled end, threaded, or threaded and coupled). *These pipes and tubes are generally known as standard pipes and tubes and are intended for the low pressure conveyance of water, steam, natural gas, and other liquids and gasses in plumbing and heating systems, air conditioning units, automatic sprinkler systems, and other related uses, and generally meet ASTM A-53 specifications.* Standard pipe may also be used for light load-bearing applications, such as for fence tubing, and as structural pipe tubing used for framing and support members for reconstruction or load-bearing purposes in the construction, shipbuilding, trucking, farm equipment, and related industries. Unfinished conduit pipe is also included in these orders.

Order, 57 Fed. Reg. at 49,453 (emphasis added).

Moreover, in keeping with the ITC's findings that mechanical tubing from subject countries presented no threat of material injury, the scope's exclusionary paragraph contained an unqualified exclusion for "mechanical tubing":

> All carbon steel pipes and tubes within the physical description outlined above are included within the scope of these orders, except line pipe, oil country tubular goods, boiler tubing, *mechanical tubing*, pipe and tube hollows for redraws, finished scaffolding, and finished conduit. Standard pipe that is dual or triple certified/stenciled that enters the U.S. as line pipe of a kind used for oil or gas pipelines is also not included in these orders.

Order, 57 Fed. Reg. at 49,453 (emphasis added).

On December 3, 2014, Commerce issued a preliminary scope ruling for mechanical tubing produced by Productos Laminados de Monterrey S.A. de C.V. and Prolamsa, Inc. (collectively, "Prolamsa"), companies that are not a party to this action. *See* Mem. from R. Weible to C. Marsh, re: Certain Black, Circular Tubing Produced to ASTM A-513 Specifications by Prolamsa (Dep't Commerce Dec. 3, 2014), P.R. 2, ECF No. 32 ("Prolamsa Preliminary Scope Ruling").  In its scope ruling request, Prolamsa asked Commerce to find that its tubing—made to the ASTM A-513 specifications[2]—qualified for the mechanical tubing exclusion from the Order's scope.  Prolamsa Preliminary Scope Ruling at 3.  Prolamsa provided a description of the subject merchandise, which included various physical, chemical, and mechanical properties of

---

[2]      The ASTM A-513 standard, titled "Standard Specifications for Electric-Resistance-Welded Carbon and Alloy Steel Mechanical Tubing" covers "electric-resistance-welded carbon and alloy steel tubing for use as mechanical tubing" and "mechanical tubing made from hot- or cold-rolled steel." Standard Specification for Electric-Resistance-Welded Carbon and Alloy Steel Mechanical Tubing, P.R. 2, ECF No. 32 at 400.

the tubing. Notably, Prolamsa described its tubes as "single stenciled as ASTM A-513."[3] Prolamsa Preliminary Scope Ruling at 4.

Commerce found that Prolamsa's tubing was outside the scope of the Order. In making its determination, Commerce initially found that the term "mechanical tubing" was not defined in the Order. Accordingly, Commerce examined the (k)(1) factors, but found that an examination of the Order, the ITC Final Determination, and Commerce's own prior scope rulings failed to provide an adequate description of what amounts to mechanical tubing. Prolamsa Preliminary Scope Ruling at 8. Commerce then turned to the (k)(2) factors. Using the (k)(2) factors, Commerce determined that tubing, which met the description provided by Prolamsa, was excluded from the scope of the Order. Specifically, Commerce found:

> The following are mechanical tubes excluded from the scope of the antidumping duty order: circular tubes that are neither galvanized nor coated with zinc [i.e., "black"], *and are single stenciled as ASTM A-513*, and meet the ASTM A-513 specification for "as welded tubing," and either (a) do not overlap with the diameter and wall thickness combinations (*i.e.*, "nominal pipe sizes") of pipe (*e.g.*, ASTM A-53) for Schedules 10, 40, or 80; or (b) do overlap with the diameter and wall thickness combinations (*i.e.*, "nominal pipe sizes") of pipe (*e.g.*, ASTM A-53) for Schedules 10, 40, or 80, and have not been hydrostatically tested, and have a carbon content not greater than 0.13 percent, and meet the Rockwell B Hardness test (that is, a minimum of 55 for grade 1010, and a minimum of 50 for lower carbon grades (*e.g.*, 1008)), and have a minimum

---

[3]       The Prolamsa Preliminary Scope Ruling notes that the initial scope ruling request "included a multitude of products meeting the A-513 mechanical tubing specification," but that "this original request did not provide sufficient information for the Department to *initiate* a scope review at that time, so the Department requested clarification." Prolamsa Preliminary Scope Ruling at 1 n.1 (emphasis added). Subsequently, "[t]hrough the clarification process, the request ha[d] been modified to entail a set of physical, mechanical, and chemical properties which is intended to enable parties and the U.S. Government to identify mechanical tubing with both greater exactness and enhanced simplicity." Prolamsa Preliminary Scope Ruling at 1 n.1. While domestic interested parties had no objection to the final description provided, there is no indication in the Prolamsa Preliminary Scope Ruling that stenciling was a "physical, mechanical," or "chemical" property of Prolamsa's tubing—notably, stenciling is not addressed at all in the ruling's (k)(2) factor analysis. *See generally* Prolamsa Preliminary Scope Ruling.

elongation (in 2 inches) of 24 percent for pipes and tubes with a diameter over 1.5 inches or have a minimum elongation (in 2 inches) of 15 percent for pipes and tubes with a diameter of 1.5 inches or less.

Prolamsa Preliminary Scope Ruling at 5 (emphasis added).    No party to the Prolamsa Preliminary Scope Ruling commented on the ruling, and on January 12, 2015, Commerce issued a final scope ruling that adopted, unchanged, the description of mechanical tubing provided by Prolamsa itself and that was contained in the preliminary scope ruling.  *See* Mem. from R. Weible to C. Marsh, re: Antidumping Duty Order on Certain Circular Welded Non-Alloy Steel Pipe from Mexico: Final Scope Ruling on Certain Black, Circular Tubing Produced to ASTM A-513 Specifications by Prolamsa, (Dep't Commerce Jan. 12, 2015), P.R. 2, ECF No. 32 ("Prolamsa Final Scope Ruling").

On May 29, 2015, Maquilacero applied for a scope ruling, asking Commerce to find its products to be excluded from the scope of the Order as mechanical tubing.[4]  Maquilacero's Request for a Scope Ruling on Certain Bare Mechanical Tubing Meeting the ASTM A-513 Specification (May 29, 2015), P.R. 4, ECF No. 32 ("Scope Ruling Request").  In its Scope Ruling Request, Maquilacero first claimed that its tubing should be excluded based on the "plain

---

[4]     The product subject to the Scope Ruling Request is welded mechanical tubing produced from

> hot-rolled and cold-rolled steel in coils, which is the primary raw material input. The coils are first slit into thinner strips according to the dimension of the product desired and the size limitations of Maquilacero's tube mill, and then are fed into Maquilacero's tube rolling lines, where the products are formed into round, rectangular, or square shaped, and longitudinally welded.

Scope Ruling Request at 5-6. Maquilacero's "size range . . . is limited and ranges from tubes with 0.75" in actual outer diameter to 4.5" actual outer diameter." Scope Ruling Request 4. In addition, "[o]nce the tube is welded, it is moved to a cooling bed and then moved to the warehouse to be prepared for shipment. The mechanical tubing is not galvanized nor coated with any other surface coating." Scope Ruling Request 6.

reading of the scope and the description of Maquilacero's black mechanical tubing . . . ." Scope Ruling Request at 2.   Next, Maquilacero argued its tubing qualified for exclusion under the description of excluded mechanical tubing found in the Prolamsa Final Scope Ruling.   Scope Ruling Request at 11.   Specifically, Maquilacero argued its products "meet the physical, chemical and mechanical properties used by the Department to identify mechanical tubing in the [Prolamsa Final Scope Ruling]."   Scope Ruling Request at 2. In other words, Maquilacero argued that since its tubing had the same physical and chemical properties as Prolamsa's, it too should be excluded from the Order.

In support of this second claim, Maquilacero attached the Prolamsa Final Scope Ruling to its Scope Ruling Request and provided a list of 46 of its products with outer diameters ranging from 0.75 to 4.5 inches in various combinations with wall thicknesses ranging from 0.059 to 0.173 inches.   Scope Ruling Request, Exs. 1, 2, P.R. 4, 2.   Also, Maquilacero claimed that, in accordance with the Prolamsa Final Scope Ruling, none of the products' outer diameter and wall thickness combinations overlapped with those found in standard pipe (*e.g.*, ASTM A-53) size schedules 10, 40, or 80, and that all of its products were not galvanized or coated with zinc, had a carbon content of less than 0.13 percent, and met the Rockwell B Hardness test requirements. Scope Ruling Request at 4-6.   Accordingly, Maquilacero asserted that its tubing fit the description of mechanical tubing used in the Prolamsa Final Scope Ruling.

Maquilacero's request noted that none of its tubing was stenciled.   Scope Ruling Request at 5.  Although plaintiff observed that the tubing was tagged with "the date, the outer diameter of the tube, the wall thickness . . . the number of pieces and the weight," it acknowledged its tubing did not "include any markings indicating the specification."   Scope Ruling Request at 5. Maquilacero maintained, however, that because stenciling is "not a physical or chemical property

of the tubing," the "requirement for stenciling is [not] necessary or reasonable" to include in a scope ruling.  Scope Ruling Request at 5. Nonetheless, Maquilacero offered to stencil its pipe in the future "if necessary" to indicate the ASTM A-513 specification.  Scope Ruling Request at 5.

Maquilacero then argued that, were the Department to find its products did not fit the description found in the Prolamsa Final Scope Ruling, it should nevertheless be excluded from the scope of the Order based on the criteria found in the (k)(2) factors.  Scope Ruling Request at 17.  These factors include the (1) "physical characteristics of the product," (2) "expectations of the ultimate purchasers," (3) "ultimate use of the product," (4) "channels of trade in which the product is sold," and (5) "manner in which the product is advertised and displayed."  19 C.F.R. § 351.225(k)(2).  For Maquilacero, an analysis of the (k)(2) factors would demonstrate that its products should be excluded from the scope of the Order.  Scope Ruling Request at 17-22. Thus, Maquilacero asked Commerce to conduct the same analysis it had used to find that the Prolamsa pipe was excluded from the Order.

On July 27, 2015, Commerce issued its Final Scope Ruling, and concluded that Maquilacero's tubing was within the scope of the Order.  *See* Final Scope Ruling at 9.  Initially, Commerce found that although "[t]he plain language of the scope of the Order states that the order does not cover 'mechanical tubing,'" the Order itself does not further define "mechanical tubing."  Final Scope Ruling at 5.  Therefore, Commerce found it should construct a definition of mechanical tubing based on the description of the merchandise contained in the petition, the initial investigation, and prior scope determinations (*i.e.*, by looking at the (k)(1) factors). In

looking at the (k)(1) factors, Commerce chose to rely exclusively on the description found in the Prolamsa Final Scope Ruling.[5] Final Scope Ruling at 5.

When considering the Prolamsa Final Scope Ruling, Commerce found that, because the ruling specifically described Prolamsa's products as "single stenciled as ASTM A-513," stenciling is required for ASTM A-513 mechanical tubing to be excluded from the scope. Final Scope Ruling at 5. Commerce disagreed with Maquilacero's claim that stenciling was not a physical property of the tubing, and noted that the Order itself states, when referring to certain standard pipe, that "[s]tandard pipe that is dual or triple certified/stenciled that enters the U.S. as line pipe of a kind used for oil or gas pipelines is also not included in the order." Final Scope Ruling at 5. For Commerce, this language "contemplates stenciling as a physical property of the merchandise which is significant such that a lack of stenciling could render merchandise within the scope when it would otherwise be excluded." Final Scope Ruling at 5. Moreover, Commerce found that the Prolamsa Final Scope Ruling's inclusion of a stenciling requirement "is a specific reference to the language of the scope itself, where stenciling is a significant physical property of the product (though in a different context)." Final Scope Ruling at 5. Commerce thus concluded that "[u]nder the plain language of the [Prolamsa Final Scope Ruling], only pipe and tube stenciled as A-513 can be considered under parts (a) or (b) of the exclusion from scope of the Order." Final Scope Ruling at 5. Based on Maquilacero's own statements that its tubing was not stenciled, Commerce concluded that plaintiff's products did not qualify for an exclusion under the Order. Final Scope Ruling at 5.

---

[5]      Commerce noted that "the petition and initial investigations by the Department and the International Trade Commission do not shed sufficient light on the meaning of 'mechanical tubing.'" Final Scope Ruling at 5 n.21 (citing Prolamsa Final Scope Ruling).

Because Commerce found the (k)(1) factors dispositive on "whether Maquilacero's products meet the scope exclusion for mechanical tubing," it did not move on to an examination of the (k)(2) factors (*i.e.*, the product's physical characteristics, expectations of ultimate purchasers, ultimate use, channels of trade, and manner of advertisement). Final Scope Ruling at 2, 5. Thus, although the Department had employed the (k)(2) factors to reach its decision excluding Prolamsa's tubing from the Order, it concluded that it could interpret the Prolamsa Final Scope Ruling as excluding Maquilacero's tubing without further reference to other tools of interpretation such as the (k)(2) factors. *See* 19 C.F.R. § 351.225(k)(1) ("[I]n considering whether a particular product is included within the scope of an order . . . [Commerce] will take into account . . . [t]he descriptions of the merchandise contained in . . . the determinations of [Commerce] (including prior scope determinations) . . . .").

Although Commerce found that, in accordance with the Prolamsa Final Scope Ruling, stenciling was required for pipe to be excluded from the Order, and that Maquilacero's products were not stenciled, "for the purpose of clarification to all parties," Commerce sought "to lay out in detail the steps to be taken to determine whether Maquilacero's A-513 products examined under the [Prolamsa Final Scope Ruling] are within the scope of the Order." Final Scope Ruling at 6. Thus, for the claimed purpose of clarification, Commerce analyzed whether Maquilacero's products had the same characteristics Commerce previously found excluded Prolamsa's mechanical tubing from the scope under a (k)(2) factors analysis. *See* Final Scope Ruling 6-9; *see also* Prolamsa Preliminary Scope Ruling 5, 8-10. Accordingly, Commerce then looked at whether Maquilacero's products were galvanized or black (finding they were black), whether the products overlapped with the combinations listed in standard pipe schedules 10, 40, or 80 with regard to outside diameter and wall thickness (finding that 39 of the 46 products did not overlap),

and for those products that did overlap, that they met the paragraph (b) specifications in the

Prolamsa Final Scope Ruling—namely, the products had not been hydrostatically tested, had a

carbon content not greater than 0.13 percent, met the Rockwell B Hardness test, and had the

requisite minimum elongation (finding that each of the remaining products met these

specifications).[6]   Final Scope Ruling at 6-9.   In other words, other than the stenciling

requirement, Commerce's analysis demonstrated that Maquilacero's products met all of the other

requirements of the Prolamsa Final Scope Ruling and that were it not for the lack of stenciling,

plaintiff's pipe would be excluded from the Order. At the start of this analysis, however,

Commerce specifically stated that it was "[l]eaving to one side the *requirement* that the product

be single-stenciled as A-513 as addressed above . . . ."   Final Scope Ruling at 6 (emphasis

added).   Put another way, Commerce conducted an analysis that demonstrated that

Maquilacero's pipe would have been excluded from the Order, had it been stenciled.

        This action followed.

---

[6]        According to the analysis in the Prolamsa Preliminary Scope Ruling, these requirements exclude a manufacturer's tubing from the Order because "a product which is not galvanized (or otherwise painted or coated) is not suitable for fencing applications," which is one of the intended uses of subject merchandise. Prolamsa Preliminary Scope Ruling at 8. Likewise, "[a] product which has a carbon content of 0.13 percent or less and an elongation (in 2 inches) of a minimum of 24 percent for pipes and tubes with a diameter over 1.5 inches . . . would generally not be considered for use in load-bearing or structural applications," which are also intended uses of subject merchandise. Prolamsa Preliminary Scope Ruling at 8. In addition, Commerce noted that "while Rockwell B Hardness testing is a requirement of A-513, it is not required for A-53." Prolamsa Preliminary Scope Ruling at 8. Moreover, according to Commerce, "[f]ailure to conduct hydrostatic testing would indicate that products are not so intended" for subject uses covered by the Order, such as "the low pressure conveyance of water, steam, natural gas, and other liquids and gases in plumbing and heating systems . . . ." Prolamsa Preliminary Scope Ruling at 8.

**STANDARD OF REVIEW**

"The court shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(1)(B)(i).

**LEGAL FRAMEWORK**

Because no statutory provision governs the interpretation of the scope of an antidumping duty order, Commerce determines whether a product is included within the order's scope in accordance with its regulations. *See generally* 19 C.F.R. § 351.225; *see also Sango Int'l, L.P. v. United States*, 484 F.3d 1371, 1376 (Fed. Cir. 2007). Interested parties often make scope ruling requests because Commerce must write its scope language in "general terms." 19 C.F.R. § 351.225(a); *see also Duferco Steel, Inc. v. United States*, 296 F.3d 1087, 1096 (Fed. Cir. 2002). When reviewing Commerce's scope rulings, the Court "afford[s] significant deference to Commerce's own interpretation of its orders, mindful that scope determinations are 'highly fact-intensive and case-specific.'" *Fedmet Res. Corp. v. United States*, 755 F.3d 912, 918 (Fed. Cir. 2014) (quoting *King Supply Co. v. United States*, 674 F.3d 1343, 1345 (Fed. Cir. 2012)). Commerce's interpretation of an antidumping order, however, may not "change the scope of that order," nor "interpret an order in a manner contrary to its terms." *Eckstrom Indus., Inc. v. United States*, 254 F.3d 1068, 1072 (Fed. Cir. 2001); *see also Kirovo-Chepetsky Khimichesky Kombinant, JSC v. United States*, 39 CIT __, ___, 58 F. Supp. 3d 1397, 1402 (2015). As to the interplay between Commerce's conclusions and those of the ITC, "allow[ing] Commerce to assess antidumping duties on products intentionally omitted from the ITC's injury investigation" would "frustrate the purpose of the antidumping laws" because it would be assessing

antidumping duties on products the ITC found did not injure domestic producers. *Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1371 (Fed. Cir. 1998) (citing 19 U.S.C. § 1673 (1994)); *see also A.L. Patterson, Inc. v. United States*, 585 F. App'x. 778, 785-86 (Fed. Cir. 2014) ("[T]here is insufficient evidence to conclude that [plaintiff's merchandise] . . . was part of the [ITC's] material injury investigation. As such, Commerce may not impose antidumping duties . . . under [19 U.S.C.] § 1673.").

When interpreting the antidumping duty order's scope, Commerce first examines the scope language from the order to determine if that language "is ambiguous and open to interpretation." *Kirovo-Chepetsky*, 39 CIT at __, 58 F. Supp. 3d at 1402; *see also Duferco Steel*, 296 F.3d at 1097 ("[A] predicate for the interpretative process is language in the order that is subject to interpretation."). Should Commerce find that language is subject to interpretation, Commerce may turn to the (k)(1) factors, *i.e.*, "[t]he descriptions of the merchandise contained in the petition, the initial investigation, and the determinations of [Commerce] (including prior scope determinations) and the Commission" for clarification. 19 C.F.R. § 351.225(k)(1); *Tak Fat Trading Co. v. United States*, 396 F.3d 1378, 1382 (Fed. Cir. 2005). While these (k)(1) sources may provide valuable guidance as to the interpretation of the final order, however, "they cannot substitute for language in the order itself." *Duferco Steel*, 296 F.3d at 1097; *see also Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States*, 776 F.3d 1351, 1354 (Fed. Cir. 2015) ("[T]he language of the order is the 'cornerstone' of a scope analysis." (quoting *Duferco Steel*, 296 F.3d at 1097)).

Pursuant to its regulation, if Commerce is able to interpret the scope of the order after examination of the (k)(1) factors—that is, if Commerce finds that the (k)(1) factors are "dispositive"—then its inquiry ends, and Commerce will issue a final scope ruling regarding

whether the subject merchandise is covered by the order.  19 C.F.R. § 351.225(d). For a (k)(1)

determination to be dispositive, "the permissible sources examined by Commerce 'must be

controlling of the scope inquiry in the sense that they *definitely answer* the scope question.'"

*OTR Wheel Eng'g, Inc. v. United States*, 36 CIT __, __, 853 F. Supp. 2d 1281, 1287-88 (2012)

(quoting *Sango Int'l*, 484 F.3d at 1379) (emphasis added). Should Commerce find that the (k)(1)

factors are "not dispositive," however, it must further consider the (1) "physical characteristics of

the product"; (2) "expectations of the ultimate purchasers"; (3) "ultimate use of the product"; (4)

"channels of trade in which the product is sold"; and (5) "manner in which the product is

advertised and displayed" (*i.e*, the (k)(2) factors).  19 C.F.R. § 351.225(k)(2). Where a scope

determination is challenged, the Court's purpose is to determine whether the scope of the order

"contain[s] language that specifically includes the subject merchandise or may be reasonably

interpreted to include it." *Duferco Steel*, 296 F.3d at 1089.


## DISCUSSION


Maquilacero's first contention is that the plain language of the Order explicitly excludes

all mechanical tubing (and thus Maquilacero's tubing) from its scope.  Pl.'s Br. 17.  Specifically,

plaintiff refers to the Order's exclusionary provision:

> *All carbon steel* pipes and *tubes within the physical description* outlined above
> *are included within the scope of these orders, except* line pipe, oil country tubular
> goods, boiler tubing, *mechanical tubing*, pipe and tube hollows for redraws,
> finished scaffolding and finished conduit.

Pl.'s Br. 17 (quoting Order, 57 Fed. Reg. at 49,453). Under plaintiff's reading of the Order,

because there is "no limitation on the exclusion for mechanical tubing, nor is [the] exclusion

drafted in ambiguous terms," it follows that there is no need for Commerce to look to other (k)(1)

materials for interpretation.  Pl.'s Br. 17. Therefore, plaintiff argues that so long as its tubing is

mechanical tubing, it must be excluded from the Order. Thus, for plaintiff, the scope of the Order "cannot be reasonably interpreted to include Maquilacero's . . . mechanical tubing" because the Order provides an "express exclusion" for its product. Pl.'s Br. 18.

In making its case, Maquilacero notes that its tubing is produced to the ASTM A-513 standard, which covers "electric-resistance-welded carbon and alloy steel tubing for use as mechanical tubing," and "mechanical tubing made from hot- or cold-rolled steel," and "is recognized to be a standard for mechanical tubing."  Pl.'s Br. 19-20 ("In a different proceeding, Commerce recognized that ASTM A-513 is a mechanical tubing specification." (citing *Certain Circular Welded Non-Alloy Steel Pipe from Mexico*, 72 Fed. Reg. 19,880, 19,881 (Dep't Commerce Apr. 20, 2007) ("New Shipper Review Ruling") (notice of prelim. intent to rescind new shipper rev.)); Pl.'s Br. 26 ("[T]he ITC noted that 'some industry guides for mechanical tubing such as ASTM-A-513 . . . provide a wide degree of options with respect to size and other characteristics.'" (quoting ITC Final Determination at 16 n.51)); *see also* Standard Specification for Electric-Resistance-Welded Carbon and Alloy Steel Mechanical Tubing, P.R. 2, ECF No. 32 ("ASTM A-513 Standard"). Maquilacero further argues that its tubing "complies with the steel chemistry required by the standard," and the "testing requirements" of ASTM A-513, "including the flaring test, a heat analysis, and tests for squareness of cut, straightness, and ovality." Pl.'s Br. 19. In addition, Maquilacero notes that its product cannot be used in the end uses described in the scope (such as the conveyance of water, steam, or gas) because it "is not hydrostatically tested, [and] thus unsuitable as standard pipe . . . ." Pl.'s Br. 19. Moreover, Maquilacero claims that its product is specifically advertised as mechanical tubing meeting the ASTM A-513 specification. Pl.'s Br. 19.

Plaintiff then argues that Commerce "provided no explanation as to why the information provided by Maquilacero did not establish that its tubing is mechanical tubing," and observes that in prior proceedings, Commerce explicitly recognized ASTM A-513 as a mechanical tubing specification. Pl.'s Br. 19-20 (citing New Shipper Review Ruling, 72 Fed. Reg. at 19,881 ("[P]ipe produced to the A-513 standard, or generally 'mechanical tubing,' is specifically excluded from the scope of the antidumping duty order on pipe and tube from Mexico.")). For plaintiff, therefore, because its product was produced to the mechanical tubing standard, it should be excluded under the plain language of the Order because it is, in fact, mechanical tubing. Indeed, plaintiff maintains that Commerce recognized that Maquilacero's tubing would be excluded from the Order as mechanical tubing if it were stenciled. *See* Pl.'s Br. 20, 34.

In response, defendant argues that Commerce "reasonably determined that the term mechanical tubing require[d] further clarification" and therefore acted reasonably in looking to the (k)(1) factors for guidance, specifically, the Prolamsa Final Scope Ruling. Def.'s Br. 19-20. Defendant maintains that Commerce is afforded "substantial discretion when determining whether a term requires further clarification." Def.'s Br. 13, 14 ("'Commerce need only meet a low threshold to show that it justifiably found an ambiguity in scope language.'" (quoting *Laminated Woven Sacks Comm. v. United States*, 34 CIT 906, 914, 716 F. Supp. 2d 1316, 1325 (2010))). Accordingly, because Commerce found that the phrase "mechanical tubing" was not defined in the Order, defendant argues that Commerce acted reasonably in consulting the other (k)(1) factors to help define the term. Def.'s Br. 14 (citing *A.L. Patterson*, 585 F. App'x. at 782-83).

Defendant further argues that plaintiff's claim that Commerce "recognized" that Maquilacero's products met the ASTM A-513 specification is unsupported by Commerce's Final

Scope Ruling.  Def.'s Br. 15.  Defendant cites the Final Scope Ruling which states that

"[Maquilacero's tubing] 'is not currently stenciled, nor does it include any markings indicating

the specification,'" and therefore could not be called mechanical tubing for purposes of the

exclusion from the scope of the Order.  Def.'s Br. 16 (quoting Final Scope Ruling at 5).  For

Commerce, its remaining analysis, which does seem to conclude that Maquilacero's product met

the physical requirements for mechanical tubing, was added "'for the purpose of clarification to

all parties.'" Def.'s Br. 16 (quoting Final Scope Ruling at 6). Put another way, defendant insists

that this analysis was not part of the Final Scope Ruling, but rather, that it was merely a

"hypothetical" analysis.  Def.'s Br. 16 ("[A]lthough Maquilacero . . . asserts that Commerce

'determined' that Maquilacero's mechanical tubing otherwise satisfied the ASTM A-513

standard, Commerce never made that determination. Rather . . . Commerce discussed the

hypothetical steps Commerce would take to determine whether Maquilacero's tubing, had it been

stenciled, would qualify as mechanical tubing under the [Prolamsa Final Scope Ruling].").

Accordingly, for Commerce, even though it went through an analysis that demonstrated that

plaintiff's merchandise, had it been stenciled, was mechanical tubing within the meaning of the

Order's exclusion, the analysis should be ignored.

        As an initial matter, the court finds that Commerce reasonably determined that the plain

language of the Order's exclusion was subject to interpretation and was therefore justified in

employing the (k)(1) and (k)(2) factors. *See Duferco Steel*, 296 F.3d at 1097 ("[A] predicate for

the interpretive process is language in the order that is subject to interpretation."); *see also*

*Meridian Prods., LLC v. United States*, 851 F.3d 1375, 1381 n.7 (Fed. Cir. 2017) ("The relevant

scope terms are 'unambiguous' if they have a 'single clearly defined or stated meaning.'"

(quoting *Unambiguous*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH

LANGUAGE UNABRIDGED (3d ed. 1986)).   Here, there is nothing to suggest that the term

"mechanical tubing" has a single definition, and so Commerce's finding that it was ambiguous

was in accordance with law. *See Meridian Prods.*, 851 F.3d at 1381-82. Therefore, Commerce

reasonably concluded that it could use interpretive tools to define "mechanical tubing." *See* 19

C.F.R. § 351.225(k).

Without abandoning its argument that the term mechanical tubing is unambiguous,

plaintiff takes issue with the manner Commerce went about constructing its definition.

Specifically, plaintiff faults the Department's reliance "solely on the narrow description of

certain mechanical tubing imported . . . in [the Prolamsa Final Scope Ruling], to 'interpret' the

mechanical tubing exclusion from the scope," with no explanation as to why the other (k)(1)

sources do not "shed sufficient light on the meaning of 'mechanical tubing.'" Pl.'s Br. 20

(quoting Final Scope Ruling at 5 n.21). For plaintiff, the ITC's final injury determination and

petitioners' agreement with that determination, are "highly relevant to the interpretation of

'mechanical tubing'" because, following the ITC's negative injury determination with respect to

mechanical tubing, Commerce specifically amended the scope language to remove certain

references to mechanical tubing in the paragraph containing the physical description of subject

merchandise and added an unqualified exclusion for mechanical tubing in the exclusionary

paragraph.[7] Pl.'s Br. 22-23 (citing Order, 57 Fed. Reg. at 49,453). Because Commerce provided

---

[7]       Specifically, Commerce's Initiation Notice and Final Determination described
subject merchandise as "circular welded non-alloy steel pipes and tubes . . . generally known as
standard pipe, *though they may also be called structural or mechanical tubing in certain
applications*." Initiation Notice, 56 Fed. Reg. at 52,529 (emphasis added); Final Determination,
57 Fed. Reg. at 42,953. The Order, however, removed this reference to mechanical tubing within
the scope and carved out an unqualified exclusion for "mechanical tubing." *See* Order, 57 Fed.
Reg. at 49,453.

no explanation as to why the ITC Final Determination and Commerce's Initiation Notice should

be ignored, however, plaintiff maintains that Commerce's sole reliance on the stenciling

requirement in the Prolamsa Final Scope Ruling is not supported by substantial evidence. Pl.'s

Br. 20-21.

Plaintiff further contends that the other (k)(1) sources "demonstrate that the clear

exclusion for mechanical tubing is consistent with the record developed at the ITC and

Commerce in the underlying [antidumping] investigations and Petitioner's position at the time."

Pl.'s Br. 21. For plaintiff, Commerce's examination of the (k)(1) factors should have revealed

that the mechanical tubing exclusion was meant to exclude its products. Pl.'s Br. 21-24. To

support this position, Maquilacero points to the ITC Final Determination, which it argues

demonstrate that "mechanical tubing is produced by a distinct domestic industry, which did not

suffer material injury by reason of imports of mechanical tubing." Pl.'s Br. 22.  Plaintiff further

notes that Commerce itself excluded some mechanical tubing from the investigation's scope.

Pl.'s Br. 6 ("In Commerce's final determination, the scope language included an exception for

'cold-drawn and cold-rolled mechanical tubing.'" (citing Final Determination, 57 Fed. Reg. at

42,953)). Moreover, plaintiff argues that because the ITC found that subject mechanical tubing

and standard pipe were separate like products—a finding that was consistent with the petitioners'

position in the dumping investigation—and made a negative injury determination with respect to

mechanical tubing imports, Commerce "cannot read the scope language to impose antidumping

duties on a product for which the ITC made no material injury determination."  Pl.'s Br. 22 ("To

'allow Commerce to assess antidumping duties on products intentionally omitted from the ITC's

injury investigation' would 'frustrate the purpose of the antidumping laws.'" (quoting *Wheatland*

*Tube*, 161 F.3d at 1371)). Accordingly, Plaintiff maintains that Commerce's determination is not in accordance with law.

Moreover, plaintiff argues that while Commerce determined that the Order "does not define 'mechanical tubing,' the same can be said of the Prolamsa Final Scope Ruling . . . ." Pl.'s Br. 20. That is, for plaintiff, the stenciling requirement found in the Prolamsa Final Scope Ruling only "reflects the product descriptions provided by one importer" and thus, "does not provide a general-purpose definition of mechanical tubing."  Pl.'s Br. 20, 27.  For plaintiff, the stenciling in the Prolamsa Final Scope Ruling only described mechanical tubing as "delineated in Prolamsa's request to Commerce."  Pl.'s Br. 27.  Put another way, for plaintiff, the description of Prolamsa's tubing as being stenciled was solely the result of the happenstance that Prolamsa, although not required to by any standard, in fact stenciled its tubes.[8]

Moreover, plaintiff argues that, not only does "Commerce provide[] no discussion on how this set of characteristics can be reconciled with the scope's unambiguous exclusion for mechanical tubing," but Commerce's "attempt to define mechanical tubing with the Prolamsa criteria is not simply an 'interpretation,' but a revision of the scope."  Pl.'s Br. 27-28.  That is, plaintiff argues that Commerce's inclusion of a stenciling requirement "is an unlawful revision of the scope language." Pl.'s Br. 29-30 ("While Commerce has the authority to interpret its scope and clarify ambiguous terms, Commerce may not import a stenciling requirement into the mechanical tubing scope exclusion where none exists in the language of the scope." (citing

---

[8]      As discussed above, although there was a need for some clarification about Prolamsa's products before Commerce could initiate a scope review, neither the Prolamsa Preliminary Scope Ruling nor the Prolamsa Final Scope Ruling mentions whether stenciling is a physical, mechanical, or chemical property of the tube—in fact the stenciling "requirement" is not mentioned outside of the description itself. *See generally* Prolamsa Preliminary Scope Ruling; *see also supra* text accompanying note 3.

*Ericsson GE Mobile Commc'ns, Inc. v. United States*, 60 F.3d 778, 782 (Fed. Cir. 1995)). Thus,

plaintiff maintains that Commerce's determination unlawfully narrowed the scope exclusion

based on "criteria that are not grounded in the Order, the petition or the original investigations."

Pl.'s Br. 29.

To support its position, plaintiff argues that, contrary to Commerce's assertion, stenciling

is not a physical characteristic intended as a requirement for pipe to be either included or

excluded from the Order because it is not mentioned in the Order's scope language relating to

either included pipe or excluded mechanical tubing.  Pl.'s Br. 31-32.  For plaintiff, because the

first sentence in the second paragraph of the scope states "'[a]ll carbon steel pipes and tubes

within *the physical description outlined above*'" are included within the scope of the Order, the

scope's first paragraph contains all the physical characteristics of the standard pipe subject to the

Order.  Pl.'s Br. 31 (quoting Order, 57 Fed. Reg. at 49,453). Plaintiff notes that stenciling is not

mentioned "among the physical characteristics in the first paragraph of the scope." Pl.'s Br. 31.

Plaintiff finds support for its position that stenciling was not contemplated in the first sentence

by its explicit inclusion in the second paragraph. The second paragraph references an exclusion

for "'[s]tandard pipe that is dual or triple certified/stenciled that enters the U.S. as line pipe of a

kind used for oil or gas pipelines.'"  Pl.'s Br. 31 (quoting Order, 57 Fed. Reg. at 49,453).  The

explicit requirement that certain *line pipe* be stenciled to be excluded from the Order, for plaintiff,

means that if the authors of the Order intended that mechanical tubing be stenciled, they knew

how to say so.

Moreover, plaintiff argues that the "context in which stenciling is mentioned in the scope

language indicates that 'certification' and 'stenciling' are used as equivalent terms." Pl.'s Br. 31.

That is, for plaintiff, the phrasing "certified/stenciled" for standard pipe that enters the United

States as line pipe indicates that excluded tubing may be "certified" or "stenciled."  Pl.'s Br. 31-

32; *see also* Reply. Br. Pl., ECF No. 41 ("Pl.'s Reply Br.") 14 ("By requiring stenciling and

certification, Commerce interprets 'certified/stenciled' to mean 'certified' and 'stenciled,' when

the normal rules of interpretation would interpret the phrase as 'certified' or 'stenciled.'").

Accordingly, plaintiff contends that including Maquilacero's product within the Order's scope

unlawfully amends the scope's language. Pl.'s Br. 32.

The Department argues that, contrary to plaintiff's contentions, it properly considered the

other (k)(1) factors but determined that they were not helpful in defining mechanical tubing.

Thus, Commerce claims that it did consider the other sources mentioned in 19 C.F.R.

§ 351.225(k)(1) but failed to find them useful. Def.'s Br. 19, 24. ("Maquilacero . . . heavily relies

upon the underlying ITC investigations and contends that because the ITC purportedly made a

'negative injury determination' regarding mechanical tubing, Maquilacero's product cannot be

included within the scope of the Order. The ITC determination that Maquilacero cites, however,

does not define mechanical tubing."). Defendant then notes that Commerce specifically cited to a

similar finding in the Prolamsa Final Scope Ruling. Def.'s Br. 24 ("Commerce determined that

the ITC determination was not helpful in defining mechanical tubing during the Prolamsa

Preliminary Scope ruling . . . . As a result, it was reasonable for Commerce to regard the ITC's

past determination on mechanical tubing to be similarly not dispositive for interpreting the

exclusion in relation to Maquilacero's products." (first citing Prolamsa Preliminary Scope Ruling

at 8; then citing Final Scope Ruling at 5 n.21)). Defendant then argues that "even assuming that

the [ITC Final Determination] does provide guidance in interpreting what constitutes mechanical

tubing," under § 351.225(k)(1), the ITC Final Determination does not take precedence "over any

other factor when Commerce makes a scope determination." Def.'s Br. 24. That is, defendant

maintains that Commerce is under "no legal obligation to make a determination in accordance with a previous ITC determination when other factors mandate a different outcome." Def.'s Br. 25. Thus, for defendant, Commerce's reliance on the Prolamsa Final Scope Ruling's mention of stenciling was reasonable because Commerce found that other sources "[did] not shed sufficient light" on what constitutes mechanical tubing.  Final Scope Ruling at 5 n.21.

As to plaintiff's argument that the stenciling requirement amounts to an unlawful revision of the scope, defendant responds that "requiring stenciling in order to fall within the Order's mechanical tubing exclusion does not impermissibly narrow the exclusion" and is "fully harmonious with the language in the Order."  Def.'s Br. 20.  In support of its position, defendant argues that the Order's reference to "certified/stenciled" in the description of excluded line pipe "plainly recognizes that a lack of stenciling on tubing can render some merchandise within the scope [of the Order] when it would otherwise be excluded." Def.'s Br. 21 (citing Final Scope Ruling at 5).  For defendant, therefore, Commerce lawfully determined that to be excluded from the Order, mechanical tubing must be stenciled. Def.'s Br. 21.

The court finds that Commerce's ruling unlawfully expanded the scope of the Order to include plaintiff's merchandise.  While the court agrees that Commerce lawfully looked to the Prolamsa Final Scope Ruling as an interpretative aid, its importation of a stenciling requirement for pipe to qualify as mechanical tubing unreasonably imposed a requirement not contained in the Order. Here, the relevant language of the Order provides that

> The products covered by [the Order] are circular welded non-alloy steel pipes and tubes, of circular cross-section, not more than [16 inches] in outside diameter, regardless of wall thickness, surface finish . . . or end finish . . . . These pipes and tubes are generally known as standard pipes and tubes and are intended for the low pressure conveyance of water, steam, natural gas, and other liquids and gases . . . [and] may also be used for light load-bearing applications . . . .

Order, 57 Fed. Reg. at 49,453. Notably, stenciling is not mentioned in the scope's description of merchandise covered by the Order.

Portions of the exclusionary paragraph, on the other hand, do mention stenciling. In particular, "*[s]tandard pipe that is dual or triple certified/stenciled that enters the U.S. as line pipe* of a kind used for oil or gas pipelines is also not included in [the Order]." Order, 57 Fed. Reg. at 49,453 (emphasis added).

This stenciling requirement, however, is notably absent from the portions of the Order dealing with plaintiff's product, mechanical tubing:

> All carbon steel pipes and tubes within the physical description outlined above are included within the scope of these orders, except line pipe, oil country tubular goods, boiler tubing, *mechanical tubing*, pipe and tube hollows for redraws, finished scaffolding, and finished conduit.

Order, 57 Fed. Reg. at 49,453 (emphasis added).

Thus, neither the scope language itself nor the mechanical tubing exclusion mentions stenciling. Indeed, the only mention of stenciling appears in the exclusionary paragraph, with reference to a different product, "[s]tandard pipe . . . that enters the U.S. as line pipe of a kind used for oil or gas pipelines . . . ." Order, 57 Fed. Reg. at 49,453. Thus, defendant's first claim for a stenciling requirement is unconvincing. Stenciling is not found in the description of pipes included within the Order's scope, and not found in the exclusion for mechanical tubing. The reference to stenciling in the exclusion for "[s]tandard pipe . . . that enters the U.S. as line pipe" merely illustrates that if the authors of the Order had intended to make it a "physical property of the merchandise" to be excluded from the Order, they knew how to do so explicitly. [9]

---

[9]     *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another . . . , it is generally

(footnote continued . . .)

Accordingly, because the scope language is the "cornerstone" of any scope determination, and Commerce is bound by "the general requirement of defining the scope of antidumping and countervailing duty orders by the actual language of the orders," *Duferco Steel*, 296 F.3d at 1098, Commerce's ruling "strayed beyond the limits of interpretation and into the realm of amendment." *Ericsson*, 60 F.3d at 782.

Commerce's claim that "stenciling is an integral requirement pursuant to the [Prolamsa Final Scope Ruling]" is equally unconvincing. Final Scope Ruling at 5. While it is the case that the Prolamsa Final Scope Ruling does describe the excluded mechanical tubing as "single stenciled as ASTM A-513," Commerce fails to say how stenciling could possibly be a physical property affecting the scope of the Order. Final Scope Ruling at 4; *see Fedmet*, 755 F.3d at 921 ("[T]he reason why the (k)(1) sources are afforded primacy in the scope analysis is because interpretation of the language used in the orders must be based on the meaning given to that language during the underlying investigations."). Thus, the meaning given to the term mechanical tubing in the investigations conducted by Commerce and the ITC must be the basis for the scope ruling. Here, there is nothing to suggest that the ITC considered stenciling when it made its negative injury determination nor is there any indication that the authors of the Order themselves had stenciling in mind when they drafted the Order. Indeed, it would have been surprising for them to have done so.

To the extent that Commerce is arguing that the ITC's final determination does not take precedence over factors found in § 351.225(k)(1), it misstates the law. Commerce may not interpret an order to include products for which the ITC has issued a negative injury

_____

presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (internal quotation marks and citations omitted).

determination. *See Wheatland Tube Co. v. United States*, 21 CIT 808, 819, 973 F. Supp. 149, 158 (1997) ("A fundamental requirement of both U.S. and international law is that an antidumping duty order must be supported by an ITC determination of material injury covering the merchandise in question. . . . It would follow that any expansion of the scope by Commerce would extend the antidumping duty order beyond the limits of the ITC injury determination and would therefore violate both U.S. and international law." (citing 19 U.S.C. § 1673 (1994))).

Nor does Commerce properly consider how the mention of stenciling came to be found in the ruling excluding Prolamsa's pipe from the Order. It is apparent that the description of the pipe provided by the producer in Prolamsa included mention of stenciling because Prolamsa's pipe was actually stenciled. *See* Prolamsa Preliminary Scope Ruling at 7; *see also* Prolamsa Final Scope Ruling at 3 (adopting, unchanged, the description of merchandise provided in the preliminary ruling). Had the producer described its pipe, and omitted mention of stenciling, there can be little doubt that Commerce would not have elevated stenciling to be a required physical property for the exclusion of mechanical tubing from the Order. That is, stenciling has no effect on the pipe's physical characteristics, expectations of ultimate purchasers, its ultimate use, channels of trade, or manner in which the product is advertised, *i.e.*, the (k)(2) factors that were considered by Commerce when excluding Prolamsa's pipe. *See* Prolamsa Preliminary Scope Ruling at 8-10.

Stenciling is simply "[a] marking operation by which numbers, designs, labels, etc, are applied to a surface, using a stencil." *Stenciling*, METALLURGICAL DICTIONARY (1st ed. 1953). It does not change the inherent quality or the intended use of the product. Indeed, the Prolamsa Preliminary Scope Ruling emphasized that Prolamsa's product should be excluded from the Order because the physical and chemical properties provided in Prolamsa's description—aside

from the stenciling requirement, which was not discussed at all—demonstrated that its products were not likely to be used as subject merchandise. *See, e.g.,* Prolamsa Preliminary Scope Ruling at 8 ("With regard to the physical characteristics of the merchandise, we note that the scope states that products covered by the Order 'are intended for the low pressure conveyance of water, steam, natural gas, and other liquids and gases in plumbing and heating systems . . . .' Failure to conduct hydrostatic testing would indicate that products are not so intended."); *see also* Prolamsa Preliminary Scope Ruling at 9 ("[W]e find that none of [the Prolamsa's listed uses of its tubing] are uses for, or expectations of purchasers of, the subject pipes and tubes . . . .").

Moreover, Commerce, in an effort to do a complete job, took the step of analyzing plaintiff's pipe for its physical and chemical characteristics. Commerce's findings demonstrated that Maquilacero's products were mechanical tubing with the same physical properties as Prolamsa's.[10] *See* Final Scope Ruling at 6-9. Nevertheless, Commerce unreasonably found that the lack of stenciling directed that plaintiff's product not be excluded. Final Scope Ruling at 6.

Although defendant-intervenor argues that a stenciling requirement "enhances the enforceability of [the Order] . . . [b]ecause the Scope Ruling excludes mechanical tubing that could be imported having the same dimensions as standard pipe," and therefore that "Commerce properly require[d] stenciling so that U.S. Customs and Border Protection [("Customs")] can

---

[10]     Specifically, Commerce stated that Maquilacero's tubing, like Prolamsa's, was not galvanized and met the ASTM A-513 specification for "welded tubing." Final Scope Ruling at 6. In addition, Commerce found that the majority of Maquilacero's tubing did not overlap with the combinations listed in standard pipe schedules 10, 40, or 80 with regard to outside diameter and wall thickness. Final Scope Ruling at 6-9. As to the seven products that did overlap, however, Commerce nevertheless determined "based upon the information placed upon the record by Maquilacero" that because the products had not been hydrostatically tested, had a carbon content not greater than 0.13 percent, met the Rockwell B Hardness test requirement, and had the requisite minimum elongation, they too would be considered mechanical tubing. Final Scope Ruling at 9.

readily assess why merchandise is being entered as non-subject," this argument also does not carry the day. Def.-Int. Br. 22. First, neither the Prolamsa Final Scope Ruling nor the Final Scope Ruling mention enforceability. Moreover, while it may be true that it is easier for Customs to assess why stenciled pipe is being entered as non-subject merchandise, this consideration is irrelevant to determining whether merchandise is within the scope of the Order. Accordingly, the court finds that the "ease of enforceability" argument lacks merit.

Finally, although defendant argues that Maquilacero's tubing does not meet the ASTM A-513 standard (and thus, is not mechanical tubing) because the specification itself requires tubing to be stenciled, the court is unconvinced. *See* Def.'s Br. 16. Commerce itself seems to concede this point by frequently referring to plaintiff's tubing as "Maquilacero's A-513 products." *See, e.g.*, Final Scope Ruling at 6-8. Also, because it is put forth here for the first time, this argument is a post-hoc rationalization not properly before the court. *See Itochu Bldg. Prods. Co. v. United States*, 40 CIT __, __, 163 F. Supp. 3d 1330, 1337-38 (2016) ("[The Court] may only sustain the agency's decision 'on the same basis articulated in the order by the agency itself.' Thus, reasoning that is offered post-hoc, in briefing to the Court or during oral argument, is not properly part of this Court's review of the agency's underlying determination . . . ." (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168-69 (1962)).

Even if defendant's argument were before the court, however, it would nevertheless fail. First, the ASTM A-513 stenciling "requirement" defendant refers to is found in the "Product and Package Marking" section of the A-513 specification.  The placement of the "requirement" in the packaging section does not help, but hurts, defendant by further supporting the court's finding that stenciling is not a physical characteristic of the tubing itself, but rather, a method of identification. *See* ASTM A-513 Standard at 413. Had the stenciling requirement been found in

the "Workmanship, Finish, and Appearance" section, for example, Commerce's argument might gain some purchase. In addition, contrary to defendant's characterization, the specification does not state that each pipe must be stenciled, but rather that "*each box, bundle, lift, or piece* shall be identified by *a tag or stencil* with the manufacturers name or brand, specified size, type, purchaser's order number *and [the A-513] specification number*."  ASTM A-513 Standard at 413 (emphasis added). Under the ASTM A-513 Product and Package Marking standard, then, a manufacturer has an option of how to identity the specification number either by stenciling or tagging. Indeed, this same "requirement" is found in the description of standard pipe that is subject to the Order, but is found nowhere in the scope language for that product. The court notes that, aside from stenciling the specification number, neither the Prolamsa Final Scope Ruling nor the Final Scope Ruling say anything about the other identifying information required by the Product and Package Marking section (*i.e.*, the brand, specified size, type, and purchaser's order number). Therefore, defendant's argument that including Maquilacero's products within the scope of the Order is consistent with the A-513 standard itself fails to convince.

Accordingly, the court finds that the imposition of a requirement having nothing to do with the physical characteristics of mechanical tubing and that appeared in the Prolamsa Final Scope Ruling by chance, was unreasonable. Therefore, Commerce's ruling was unsupported by substantial evidence.

## CONCLUSION

For the foregoing reasons, the court finds that Commerce unlawfully expanded the scope of the Order by adding a stenciling requirement. Therefore, the court remands the matter to Commerce with instructions that (1) it not impose a stenciling requirement, and (2) it find that Maquilacero's tubing is excluded from the Order based on its analysis found on pages 6-9 of the

Final Scope Ruling. Although Commerce claims that this analysis was somehow outside of the Final Scope Ruling, on remand Commerce shall find plaintiff's products are excluded from the Order using the same analysis in the Final Scope Ruling and that is found in this opinion.

Based on the foregoing, it is hereby

**ORDERED** that Commerce's Final Scope Ruling is remanded; it is further

**ORDERED** that, on remand, Commerce shall issue a ruling that complies in all respects with this Opinion and Order, is based on determinations that are supported by substantial record evidence, and is in all respects in accordance with law; it is further

**ORDERED** that, on remand, Commerce is directed to find that stenciling is not required for Maquilacero's products to be excluded from the scope of the Order and that, based on Prolamsa's Final Scope Ruling, the analysis found on found on pages 6-9 of the Final Scope Ruling, and this opinion, Maquilacero's pipe is excluded from the Order; it is further

**ORDERED** that, Commerce may reopen the record to solicit additional information required to make these determinations or otherwise complete its analysis; and it is further

**ORDERED** that the remand results shall be due ninety (90) days following the date of this Opinion and Order; comments to the remand results shall be due thirty (30) days following filing of the remand results; and replies to such comments shall be due fifteen (15) days following filing of the comments.

/s/ Richard K. Eaton
Richard K. Eaton, Judge

Dated:  August 30, 2017
New York, New York